**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICKEY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   1:14-cv-06959 |
| | ) | |
| THE CITY OF CHICAGO, a Municipal | ) | |
| Corporation; Commander | ) | Hon. Jorge L. Alonso |
| GLENN EVANS; Officer T. MUELLER #15562; | ) | |
| Officer JOSE SANCHEZ #5476; Officer Ruben | ) | |
| SANCHEZ #11256; Officer K. JOHNSON #331; | ) | |
| Officer Brian BRATTON, #11388; Officer | ) | |
| MURPHY RAYL #820; Officer | ) | |
| Officer JONATHAN CHIBICKI; and | ) | |
| and JOHN DOE OFFICERS 1-20; | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff, RICKEY WILLIAMS, by and through his attorneys, ROMANUCCI & BLANDIN, LLC, and for Plaintiff's Third Amended Complaint at Law against Defendants, CITY OF CHICAGO, a municipal corporation; Commander GLENN EVANS; Officer T. MUELLER #15562; Officer JOSE SANCHEZ #5476; Officer RUBEN SANCHEZ #11256; Officer K. JOHNSON #331; Officer BRIAN BRATTON #11388; Officer MURPHY RAYL #820; OFFICER JONATHAN CHIBICKI; and JOHN DOE OFFICERS 1-20, pleading hypothetically and in the alternative, states as follows:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331.

2.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the City of Chicago, Illinois.

1

Moreover, upon information and belief, all or most of the parties reside in this Judicial District.

## THE PARTIES

3.      Defendant, CITY OF CHICAGO, is a municipal corporation organized under the laws of the State of Illinois.

4.      In and before January 30, 2013, and at all relevant times, the Defendant, CITY OF CHICAGO, a municipal corporation, maintained, as a division of said municipal corporation, a certain police department, commonly referred to as the Chicago Police Department.

5.      On and before January 30 2013, and at all relevant times, Defendant GLENN EVANS ("Defendant EVANS") was a Chicago Police Officer employed by the Defendant CITY OF CHICAGO Police Department.

6.      Defendant EVANS was a Commander who held a supervisory position within the CITY OF CHICAGO Police Department.

7.      On and before January 30, 2013, and at all relevant times, when Defendant EVANS was engaging in the complained of conduct herein, he was acting under color of law and in the course of his employment as a City of Chicago Police Officer.

8.      On and before January 30, 2013, and at all relevant times, Defendants Officer T. MUELLER #15562, Officer JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; Officer K. JOHNSON #331, Officer B. BRATTON #11388, Officer MURPHY RAYL #820, OFFICER JONATHAN CHIBICKI, and JOHN DOE OFFICERS 1-20 (hereinafter collectively referred to as "DEFENDANT OFFICERS") were Chicago Police Officers employed by the Defendant CITY OF CHICAGO Police Department.

9.      On and before January 30, 2013, and at all relevant times, when Defendant Officers, including Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN

SANCHEZ, #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI, were engaging in the complained of conduct, they were acting under color of law and in the course of their employment as City of Chicago Police Officers.

10.     At all relevant times, Plaintiff RICKEY WILLIAMS ("WILLIAMS") was a citizen of the United States and a resident of Chicago, Cook County, Illinois.

## FACTS COMMON TO ALL COUNTS

### A. The January 30, 2013 Incident

11.     On January 30, 2013, in the late afternoon or evening, Plaintiff WILLIAMS, who was twenty-two years old at the time, was at or near a bus stop located at the corner of East 71st Street and South Eberhart Avenue in Chicago, Illinois.

12.     At the aforesaid time and place, Defendant EVANS pulled up to the bus stop in EVANS's squad car and began to stare at Plaintiff WILLIAMS as WILLIAMS waited at the bus stop.

13.     After several minutes of staring, Plaintiff WILLIAMS became nervous and scared and ran into an abandoned home on South Eberhart Avenue.

14.     Upon information and belief, Defendant EVANS, who was joined by numerous other Chicago Police Department officers, including some and/or all of the Defendant OFFICERS, pursued Plaintiff WILLIAMS.

15.     At all relevant times, Defendant OFFICERS were Defendant EVANS' subordinates and under his direct command.

16.     Defendant EVANS and Defendant OFFICERS kicked in the front door of the abandoned home and found Plaintiff WILLIAMS smoking a cigarette in one of the rooms.

17.     Without just cause or provocation, Defendant EVANS and Defendant OFFICERS

3

immediately and aggressively grabbed, pushed, and battered Plaintiff WILLIAMS, eventually throwing WILLIAMS to the floor.

18.     While placing his knee on WILLIAMS's torso, Defendant EVANS began to coercively interrogate and torture Plaintiff WILLIAMS.

19.     Defendant EVANS placed a Taser gun or stun gun to WILLIAMS's groin area and demanded to know where WILLIAMS "put the guns."

20.     Defendant EVANS then jammed the barrel of his service revolver deep into WILLIAMS's mouth, touching his throat, and said "I should kill you right now."

21.     After the gun was placed in WILLIAMS's mouth, WILLIAMS was stood up and another unknown Chicago Police Department officer (hereinafter, "JOHN DOE OFFICER 1") battered WILLIAMS twice in the face, in front of Defendant EVANS.

22.     Upon information and belief, JOHN DOE OFFICER 1 was one of the above-listed Defendant OFFICERS, namely, Defendants Officer T. MUELLER #15562, Officer JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; Officer K. JOHNSON #331, Officer B. BRATTON #11388, Officer MURPHY RAYL #820, and/or OFFICER JONATHAN CHIBICKI.

23.     During the incident, JOHN DOE OFFICER 1 also slammed WILLIAMS's head against the ground, while Defendant EVANS was present.

24.     During the incident, another unknown Chicago police officer (hereinafter, "JOHN DOE OFFICER 2") also aggressively grabbed, pushed, and/or battered WILLIAMS, while Defendant EVANS was present.

25.     Upon information and belief, JOHN DOE OFFICER 2 was one of the above-listed Defendant OFFICERS.

26.     While WILLIAMS was led out of the abandoned home, WILLIAMS asked if he could spit. The CITY OF CHICAGO police officers said "no," and then WILLIAMS spit out blood, which was caused by the service resolver being aggressively shoved deep into WILLIAMS's throat.

27.     During the incident, Defendant EVANS, JOHN DOE OFFICER 1, JOHN DOE OFFICER 2, and/or other Defendant OFFICERS also made various threats to WILLIAMS, including, but not limited to, the following:

    a.   The police officers would put WILLIAMS in jail for a "long time" by bringing gun charges against him.

    b.   The police officers would set a multi-million dollar bond, knowing WILLIAMS could not pay the amount to get out of jail.

    c.   The police officers would plant illegal drugs on WILLIAMS and charge him criminally for possession.

28.     During the incident and/or after at the police station, JOHN DOE OFFICER 1 told WILLIAMS not to "mess with the Commander" or "play games with the Commander," referring to Defendant EVANS.

29.     Despite the coercive interrogation and torture, Plaintiff WILLIAMS insisted he did not know where any guns were located.

30.     At all relevant times, Plaintiff WILLIAMS was not resisting arrest and did not constitute any threat of harm to Defendant EVANS or any other person in the home.

31.     Defendant EVANS and the Defendant OFFICERS present never searched Plaintiff WILLIAMS for any weapons or drugs. In fact, WILLIAMS was put into the holding pen at the police station with his cell phone still in his pocket.

32.     Plaintiff WILLIAMS was then charged with reckless conduct, a misdemeanor.

At all relevant times, the police officers involved in the RICKEY WILLIAMS stop, seizure, interrogation and detention, including JOHN DOE OFFICERS 1 and 2, were Defendant EVANS's subordinates and under his direct command.

**B. Plaintiff's Charge Dismissed, IPRA Recommendation**

33.     The reckless conduct charge was dismissed several months later by the court.

34.     Within a few days of the incident, Plaintiff WILLIAMS filed a complaint with the Independent Police Review Authority (IPRA), the City agency that investigates complaints of excessive police force. IPRA initiated an investigation into Defendant EVANS's conduct on January 30, 2013.

35.     During IPRA's investigation, a DNA test revealed that Plaintiff WILLIAMS's DNA was identified on Defendant EVANS's service revolver.

36.     In April 2014, after conducting its investigation into the WILLIAMS incident described above, IPRA recommended that Defendant EVANS be stripped of his police powers.

37.     Upon information and belief, a memo was sent from IPRA, signed by IPRA Chief Administrator Scott Ando, to Chicago Police Superintendent Garry McCarthy. The IPRA memo pointed out the DNA match and recommended that the police department relieve Defendant EVANS of his police powers and "evaluate" the Commander's assignment.

38.     Despite IPRA's findings and recommendations, former Chicago Police Superintendent McCarthy, Chicago Mayor Rahm Emmanuel, and other City supervisors permitted Defendant EVANS to remain in his post as a District Commander. It was not until late August 2014, after criminal charges were filed and the case gained widespread media attention, that Defendant EVANS was stripped of his police powers.

39.     After receiving the DNA results, IPRA referred the WILLIAMS case to the Cook

6

County State's Attorney's Office, who charged Defendant EVANS with one count of aggravated battery and one count of official misconduct as it related to his treatment of Plaintiff WILLIAMS.

### C. The Chicago Police Department's History of Failing to Discipline Police Officers who Coercively Interrogate and/or Torture suspects, including Commander Evans

40. At all relevant times, the Defendant CITY OF CHICAGO was aware of Defendant EVANS's long history of citizen complaints regarding excessive force. In fact, Defendant EVANS has been investigated numerous times by IPRA and IPRA's predecessor, the Office of Professional Standards (OPS).

41. Further, according to records released by the City of Chicago in 2014, between approximately May 2001 and May 2006, Defendant EVANS had over 10 misconduct complaints filed against him, none of which resulted in discipline.

42. According to records released by the City of Chicago in 2014, hundreds of CITY OF CHICAGO Police Officers had more than 10 misconduct complaints filed against them during the time period from approximately May 2001 to May 2006.

43. To date, Defendant EVANS has also been named a civil defendant in at least five other lawsuits pursuant to his role as a Chicago police officer, including, but not limited to: *Simmons v. City of Chicago*, 08 C 2769 (excessive force to a City of Chicago Water Department employee attempting to provide Evans with notice of overdue water bills) and *Simmons v. Officer E.O. Nwagwu et. al*. 08 C 3146 (Defendant Evans allegedly punched and proceeded to Taser plaintiff's groin area in a police interrogation room).

44. Despite the numerous citizen complaints and subsequent OPS and IPRA investigations regarding excessive force, in August 2012, Defendant EVANS was promoted by Superintendent McCarthy to a District Commander position.

45.     On March 20, 2014, during a Chicago Police Board Public Meeting, despite the numerous complaints against Defendant EVANS and the ongoing RICKEY WILLIAMS investigation by IPRA, Superintendent McCarthy continued to praise EVANS as "probably the most aggressive district commander in the Chicago Police Department" and one of his "best guys," while explaining his decision to move EVANS to the head of the Chicago Police Department's Harrison District.

### COUNT 1 – 42 U.S.C. §1983—Excessive Force
### (Rickey Williams v. Glenn Evans)

46.     Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 1 as though fully set forth herein.

47.     At all times relevant, Defendant EVANS was an authorized officer, agent, and/or employee of the CITY OF CHICAGO Police Department, and was acting in the course of his employment and under color of state law.

48.     At all times relevant, it was the duty of Defendant EVANS, individually and as an officer, agent and/or employee of the CITY OF CHICAGO Police Department, to refrain from using unreasonable excessive force against others, including Plaintiff WILLIAMS.

49.     On January 30, 2013, in breach of said duty, Defendant EVANS used unreasonable and excessive force in violation of the United States Constitution by engaging in the following acts or omissions:

   a)  Defendant used a level of force that Defendant knew, or should have known, was excessive when he, among other things, threatened to Taser Plaintiff's groin area, jammed a gun into Plaintiff's mouth, and/or made threats to pin unfounded gun charges on Plaintiff and send Plaintiff away to prison for "a long time";

   b)  Defendant used an unreasonable amount of force in relationship to the threat or force posed by the Plaintiff, who was not resisting arrest or threatening any police officers;

8

c) Defendant used excessive force in violation of the Chicago Police Department's policy which expressly prohibits use of excessive force;

d) Defendant failed to use less dangerous means of restraint; and/or

e) Defendant failed to follow proper police procedures and adhere to a use of force continuum consistent with that used by law enforcement agencies in Illinois.

50. At all times relevant, the aforementioned conduct of Defendant, GLENN EVANS, constituted unreasonable excessive force in violation of the United States Constitution.

51. The actions of Defendant EVANS were objectively unreasonable and were undertaken intentionally with willful indifference to Plaintiff WILLIAMS's constitutional rights.

52. The actions of Defendant EVANS would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the time that Defendant EVANS used such force.

53. The actions of Defendant EVANS were undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff WILLIAMS.

54. As a proximate cause of Defendant's unreasonable and excessive use of force, RICKEY WILLIAMS experienced injuries, including physical and psychological pain and suffering.

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendant, GLENN EVANS, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

### COUNT 2 – 42 U.S.C. §1983—Excessive Force
**(Rickey Williams v. Defendant Officers T. Mueller, Jose Sanchez, K. Johnson, B. Bratton, Murphy Rayl, Ruben Sanchez, and Jonathan Chibicki)**

55.     Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 2 as though fully set forth herein.

56.     At all times relevant, Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI were authorized officers, agents, and/or employees of the CITY OF CHICAGO Police Department, and were acting in the course of their employment and under color of state law.

57.     At all times relevant, it was the duty of Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI, individually and as officers, agents and/or employees of the CITY OF CHICAGO Police Department, to refrain from using unreasonable excessive force against others, including Plaintiff WILLIAMS.

58.     On January 30, 2013, in breach of said duty, Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI used unreasonable and excessive force in violation of the United States Constitution by engaging in the following acts or omissions:

> a)  Defendants used a level of force that Defendants knew, or should have known, was excessive when they, among other things, threatened to Taser Plaintiff's groin area, jammed a gun into Plaintiff's mouth, and/or made threats to pin unfounded gun charges on Plaintiff and send Plaintiff away to prison for "a long time";

b) Defendants used an unreasonable amount of force in relationship to the threat or force posed by the Plaintiff, who was not resisting arrest or threatening any police officers;

c) Defendants used excessive force in violation of the Chicago Police Department's policy which expressly prohibits use of excessive force when, among other things, they battered Plaintiff ;

d) Defendants failed to use less dangerous means of restraint; and/or

e) Defendants failed to follow proper police procedures and adhere to a use of force continuum consistent with that used by law enforcement agencies in Illinois.

59.     At all times relevant, the aforementioned conduct of the Defendant OFFICERS, constituted unreasonable excessive force in violation of the United States Constitution.

60.     The actions of Defendants were objectively unreasonable and were undertaken intentionally with willful indifference to Plaintiff WILLIAMS's constitutional rights.

61.     The actions of Defendants would not be considered reasonable by reasonably competent police officers in the circumstances presented at the time that Defendant OFFICERS used such force.

62.     The actions of Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI were undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff WILLIAMS.

63.     As a proximate cause of Defendants' unreasonable and excessive use of force, RICKEY WILLIAMS experienced injuries, including physical and psychological pain and suffering.

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendants, Officer T. MUELLER #15562, Officer JOSE SANCHEZ

#5476, Officer RUBEN SANCHEZ, #11256; Officer K. JOHNSON #331, Officer B. BRATTON #11388, Officer MURPHY RAYL #820, Officer JONATHAN CHIBICKI, and JOHN DOE OFFICERS 1-20, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

### COUNT 3 – 42 U.S.C. §1983—Ratification
### (Rickey Williams v. City of Chicago)

64.     Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 3 as though fully set forth herein.

65.     At all relevant times, the employees, agents, and/or officers of Defendant CITY OF CHICAGO's Police Department, including Defendant EVANS, were acting under the color of state law.

66.     The employees, agents and/or officers of the Defendant CITY OF CHICAGO Police Department, including Defendant EVANS, deprived RICKEY WILLIAMS of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, including the right to be secure in his person against unreasonable seizures and use of excessive force.

67.     Upon information and belief, a final policy maker, such as Chicago Police Superintendent McCarthy and/or Chicago Mayor Rahm Emmanuel, acting under color of law, who had final policymaking authority and disciplinary authority concerning the acts of Defendant EVANS, ratified Defendant EVANS's acts and the bases of them in regards to the RICKEY WILLIAMS incident described above.

68.     Upon information and belief, the final policymaker knew of and specifically approved of Defendant EVANS's acts described above, which permitted Defendant EVANS to remain in his post until the case gained widespread media attention.

69. Upon information and belief, a final policy maker has determined that the acts of Defendant EVANS were "within policy," which permitted GLENN EVANS to remain in his post until the case gained widespread media attention.

70. As a direct and proximate result of the Constitutional violations caused by the employees, agents and/or officers of the Defendant CITY OF CHICAGO Police Department, and its policymakers, Plaintiff WILLIAMS was deprived of his liberty and suffered damages, including physical and emotional injuries.

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendant, CITY OF CHICAGO, awarding compensatory damages, attorney's fees, and any further relief this Court deems just.

## COUNT 4 – 42 U.S.C. §1983—Policy and Custom of Failing to Discipline and Punish Police Officers
### (Rickey Williams v. City of Chicago)

71. Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 4 as though fully set forth herein.

72. At all relevant times, the employees, agents, and/or officers of Defendant CITY OF CHICAGO's Police Department, including Defendant EVANS, were acting under the color of state law.

73. The employees, agents and/or officers of the Defendant CITY OF CHICAGO Police Department, including Defendant EVANS, deprived RICKEY WILLIAMS of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, including the right to be secure in their persons against unreasonable seizures and use of excessive force.

74.     As outlined above, Defendant CITY OF CHICAGO has a widespread practice of failing to discipline and/or punish police officers for the use of excessive force, including Defendant EVANS. This *de facto* policy encourages Chicago police officers to engage in misconduct with impunity and without fear of official consequences.

75.     Moreover, Defendant CITY OF CHICAGO has a well-settled, widespread "code of silence" that exists within the Chicago Police Department whereby officers conceal each other's misconduct in contravention of their sworn duties.

76.     This *de facto* policy and code of silence is evidenced and caused by the CITY OF CHICAGO's failure to: (1) sufficiently investigate allegations of police misconduct; (2) accept citizen complaints against police officers; (3) promptly interview suspected officers or take witness statements and preserve evidence; and/or (4) properly and sufficiently discipline officers, including those that use coercive interrogation techniques and torture on suspects.

77.     This *de facto* policy encourages Chicago police officers to engage in misconduct with impunity and without fear of official consequences. Further, this *de facto* policy and code of silence results in officers' failure to report instances of misconduct of which they are aware, despite their obligation to do so as police officers.

78.     Defendant CITY OF CHICAGO Police Department also created and/or allowed a policy, custom, or usage wherein its police officers failed to intervene to stop other officers from using excessive force in detaining suspects, including RICKEY WILLIAMS.

79.     The aforementioned policies, usages, and/or customs of the Defendant CITY of CHICAGO proximately caused a culture and attitude throughout the CITY OF CHICAGO Police Department that officers are "above the law" – and may act in violation of law and the United States Constitution without fear of consequence. Further, and as a result of the

14

aforementioned policies, usages, and/or customs, the employees, agents and/or officers of the Defendant CITY OF CHICAGO Police Department, including GLENN EVANS, deprived Plaintiff WILLIAMS of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, including the right to be secure in his person against unreasonable seizures and use of excessive force.

80.    As a direct and proximate result of the Constitutional violations caused by the employees, agents and/or officers of the Defendant CITY OF CHICAGO Police Department, Plaintiff WILLIAMS was deprived of his liberty and suffered damages, including physical and emotional injuries.

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendant, CITY OF CHICAGO, awarding compensatory damages, attorney's fees, and any further relief this Court deems just.

## COUNT 5 – 42 U.S.C. §1983—Unconstitutional Customs, Policies, and Practices
### (Rickey Williams v. City of Chicago)

81.    Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 5 as though fully set forth herein.

82.    At all relevant times, the employees, agents, and/or officers of Defendant CITY OF CHICAGO's Police Department, including GLENN EVANS, were acting under the color of state law.

83.    At all relevant times, the employees, agents, and/or officers of Defendant CITY OF CHICAGO's Police Department, including GLENN EVANS, were acting pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant CITY OF CHICAGO Police Department.

84.     Upon information and belief, Defendant CITY OF CHICAGO Police Department, including its agents, employees, and/or officers, together with other City of Chicago policymakers and supervisors maintained, *inter alia*, the following unconstitutional customs, practices, and/or policies:

a)  Using excessive force while detaining suspects;

b)  Conducting physically, psychologically, or otherwise illegal or improperly coercive interrogations of witnesses, suspects, and/or arrestees, including the use of torture techniques to obtain confessions or get information;

c)  Providing inadequate training regarding how to detain suspects and the proper amount of force that can be used in various circumstances;

d)  Employing and retaining as police officers individuals, such as Defendant EVANS, who the Defendant CITY OF CHICAGO knew or reasonably should have known had dangerous propensities for abusing authority and for using excessive force on suspects and other citizens;

e)  Inadequately supervising, training, controlling, assigning, and disciplining CITY OF CHICAGO police officers and other personnel, including Defendant EVANS, who Defendant CITY OF CHICAGO knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f)  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by CITY OF CHICAGO police officers, including Defendant EVANS;

g)  Failing to adequately discipline CITY OF CHICAGO police officers, including Defendant EVANS, for the above-referenced categories of misconduct, including providing "slaps on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

h)  Even where police officer misconduct is determined to be unlawful by IPRA or the Cook County State's Attorney's Office, refusing to discipline, terminate, or retrain officers involved;

i)  Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall" or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the

other officer's wrongdoing.

j)  Maintaining a policy of inaction and an attitude of indifference towards increasing numbers of excessive use of police force complaints, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in excessive use of police force.

85.     Defendant CITY OF CHICAGO Police Department, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged above. Despite having knowledge of the above, these Defendants condoned, tolerated and through their own actions or inactions thereby ratified such policies.

86.     Such Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff RICKEY WILLIAMS, as well as its detrimental impact on the confidence the public has in the police force that serves it.

87.     As a direct and proximate result of the Constitutional violations caused by the employees, agents and/or officers of the Defendant CITY OF CHICAGO Police Department, and other policymakers, Plaintiff RICKEY WILLIAMS was deprived of his liberty and suffered damages, including physical and emotional injuries.

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendant, CITY OF CHICAGO, awarding compensatory damages, attorney's fees, and any further relief this Court deems just.

## COUNT 6 – 42 U.S.C. §1983 – Liability of Supervisory Officials
### (Rickey Williams v.  Glenn Evans)

88.     Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 6 as though fully set forth herein.

17

89.     On and before January 30 2013, and at all relevant times, Defendant EVANS was a Chicago Police Officer employed by the Defendant CITY OF CHICAGO Police Department.

90.     At all relevant times, Defendant EVANS was a Commander who held a supervisory position within the CITY OF CHICAGO Police Department.

91.     At all relevant times, DOE OFFICERS 1 and 2 were Defendant EVANS's subordinates.

92.     On and before January 30, 2013, and at all relevant times, when Defendant EVANS was engaging in the complained of conduct, he was acting under color of law and in the course of his employment as a City of Chicago Police Officer.

93.     On January 30, 2013, the aforementioned conduct of DOE OFFICERS 1 and 2 constituted excessive force in violation of the United States Constitution.

94.     The aforementioned conduct of DOE OFFICERS 1 and 2 was objectively unreasonable.

95.     The aforementioned acts of DOE OFFICERS 1 and 2 were undertaken intentionally, willfully, with malice, and with reckless indifference to WILLIAMS's constitutional rights.

96.     Throughout the January 30, 2013, encounter with RICKEY WILLIAMS, Defendant EVANS had knowledge that the aforementioned conduct of DOE OFFICERS 1 and 2 constituted unreasonably excessive force under the United States Constitution.

97.     Throughout the January 30, 2013, encounter with RICKEY WILLIAMS, Defendant EVANS had knowledge that WILLIAMS's constitutional rights were being violated.

98.     Throughout the January 30, 2013, encounter with RICKEY WILLIAMS, Defendant EVANS: (a) directed DOE OFFICERS 1 and 2 to use unreasonably excessive force

18

on WILLIAMS; (b) had actual knowledge of DOE OFFICERS 1 and 2's violation of WILLIAMS's constitutional rights and acquiesced in that violation; and/or (c) Defendant EVANS, with deliberate indifference to the consequences, established and maintained a *de facto* policy, practice or custom in which his subordinate officers were permitted to use excessive force, causing and enabling DOE OFFICERS 1 and 2 to violate WILLIAMS's rights.

99.    As a result of Defendant EVANS's conduct, including his ordering of said conduct, acquiescence to said conduct, failure to intervene, and/or establishment of a *de facto* unconstitutional policy or custom, Plaintiff RICKEY WILLIAMS was deprived of his liberty and suffered damages, including physical and emotional injuries.

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendant, GLENN EVANS, awarding compensatory damages, attorney's fees, punitive damages, and any further relief this Court deems just.

### COUNT 7 – 42 U.S.C. §1983 – Failure to Intervene
**(Rickey Williams v.  Glenn Evans)**

100.    Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 7 as though fully set forth herein.

101.    On January 30, 2013, the aforementioned conduct of DOE OFFICERS 1 and 2 constituted excessive force in violation of the United States Constitution.

102.    The aforementioned conduct of DOE OFFICERS 1 and 2 was objectively unreasonable.

103.    The aforementioned acts of DOE OFFICERS 1 and 2 were undertaken intentionally, willfully, with malice, and with reckless indifference to WILLIAMS's constitutional rights.

104.    Throughout the January 30, 2013, encounter with RICKEY WILLIAMS,

Defendant EVANS had knowledge that the aforementioned conduct of DOE OFFICERS 1 and 2 constituted unreasonably excessive force under the United States Constitution.

105.    Throughout the January 30, 2013, encounter with RICKEY WILLIAMS, Defendant EVANS had knowledge that WILLIAMS's constitutional rights were being violated.

106.    Throughout the January 30, 2013, encounter with RICKEY WILLIAMS, Defendant EVANS had a realistic opportunity to intervene and prevent deprivation of WILLIAMS's constitutional rights.

107.    As a result of Defendant EVANS's failure to intervene, Plaintiff RICKEY WILLIAMS was deprived of his liberty and suffered damages, including physical and emotional injuries.

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendant, GLENN EVANS, awarding compensatory damages, attorney's fees, punitive damages, and any further relief this Court deems just.

### COUNT 8 – 42 U.S.C. §1983 – Failure to Intervene
### (Rickey Williams v. Defendant Officers T. Mueller, Jose Sanchez, Ruben Sanchez, K. Johnson, Brian Bratton, Murphy Rayl, and Jonathan Chibicki)

108.    Plaintiff RICKEY WILLIAMS hereby adopts and re-alleges Paragraphs 1 through 45 as and for Paragraphs 1 through 45 of Count 8 as though fully set forth herein.

109.    On January 30, 2013, the aforementioned conduct of Defendant GLENN EVANS and/or DOE OFFICERS 1 and 2 constituted excessive force in violation of the United States Constitution.

110.    The aforementioned conduct of GLENN EVANS and/or DOE OFFICERS 1 and 2 was objectively unreasonable.

111.    The aforementioned acts of GLENN EVANS and/or DOE OFFICERS 1 and 2 were undertaken intentionally, willfully, with malice, and with reckless indifference to WILLIAMS's constitutional rights.

112.    Throughout the January 30, 2013 encounter with RICKEY WILLIAMS, Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI had knowledge that the aforementioned conduct of GLENN EVANS and/or DOE OFFICERS 1 and 2 constituted unreasonably excessive force under the United States Constitution.

113.    Throughout the January 30, 2013 encounter with RICKEY WILLIAMS, Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI had knowledge that WILLIAMS's constitutional rights were being violated.

114.    Throughout the January 30, 2013 encounter with RICKEY WILLIAMS, Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI had a realistic opportunity to intervene and prevent deprivation of WILLIAMS's constitutional rights.

115.    As a result of Defendant Officers T. MUELLER #15562, JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; K. JOHNSON #331, B. BRATTON #11388, MURPHY RAYL #820, and JONATHAN CHIBICKI's failure to intervene, Plaintiff RICKEY WILLIAMS was deprived of his liberty and suffered damages, including physical and emotional injuries.

21

WHEREFORE, Plaintiff, RICKEY WILLIAMS, respectfully requests that this Court enter judgment against Defendants, Officer T. MUELLER #15562, Officer JOSE SANCHEZ #5476, Officer RUBEN SANCHEZ, #11256; Officer K. JOHNSON #331, Officer B. BRATTON #11388, Officer MURPHY RAYL #820, Officer JONATHAN CHIBICKI, and JOHN DOE OFFICERS 1-20, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC


___/s/ Martin D. Gould___
Attorney for Plaintiff


Antonio M. Romanucci
Martin D. Gould
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street, Suite 900
Chicago, Illinois 60654
(312) 458-1000
(312) 458-1004 *facsimile*
Attorney No.: 35875
aromanucci@rblaw.net
mgould@rblaw.net